UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAKHDAR BOUMEDIENE, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Case No.  04-1166 (RJL) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM ORDER

The issue before the Court is what definition of "enemy combatant" should be employed in the upcoming hearings in this case.  The Government proposes a revised, and somewhat expanded, version of an earlier definition crafted by the Department of Defense.  *See* Resp'ts Mem. Addressing the Definition of Enemy Combatant [Dkt. #228] at 5.  Detainees' counsel, not surprisingly, have proposed a much narrower version, requiring that "civilians," such as the detainees here, "directly participat[e] in hostilities as part of an organized armed force in an armed conflict against the United States." Pet'rs Mem. Regarding the Definition of "Enemy Combatant" [Dkt. #222] at 20.

I indicated at the close of the hearing on October 23, 2008 that my initial sense was that both sides were going too far, and that I was likely to end up somewhere in the middle.  After a weekend of reading and reviewing the voluminous materials and pleadings in this case, my initial impression has not changed.  Indeed, I would say it has solidified even further.

So the question becomes, if not those definitions proposed by the parties, what definition? The temptation is great to accept both sides invitation at oral argument to engage in the type of judicial craftsmanship recently exhibited by no fewer than four distinguished Federal Circuit judges in *al-Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008). However, notwithstanding that temptation, I do not believe, on further reflection, that it is the province of the judiciary to *draft* definitions. It is our limited role to determine whether definitions crafted by either the Executive or the Legislative branch, or both, are consistent with the President's authority under the Authorization for Use of Military Force, Pub. L. No. 107-40 (2001) (the "AUMF"), and his war powers under Article II of the Constitution. And, if the definitions are consistent with the Constitution and the AUMF, we must interpret the meaning of the definition as it applies to the facts in any given case. Because, in the end, regardless of what definition is used, it will be a mixed question of law and fact as to whether the Government has met its burden of proof.

Accordingly, the prudent and reasonable course under these circumstances is to review and evaluate the various iterations of the definition drafted by the Executive and/or Congress over the past four years and determine whether there is one version consistent with both the AUMF and Article II. Fortunately, there is a definition that was crafted by the Executive, not the courts, and blessed by Congress which in my judgment passes muster under both the AUMF and Article II. That definition, ironically, is the very first one crafted by the Department of Defense in 2004 for the type of Combatant Status Review Tribunal ("CSRT") proceedings that these six detainees were given. *See*

So the question becomes, if not those definitions proposed by the parties, what definition? The temptation is great to accept both sides invitation at oral argument to engage in the type of judicial craftsmanship recently exhibited by no fewer than four distinguished Federal Circuit judges in *al-Marri v. Pucciarelli*, 534 F.3d 213 (4th Cir. 2008). However, notwithstanding that temptation, I do not believe, on further reflection, that it is the province of the judiciary to *draft* definitions. It is our limited role to determine whether definitions crafted by either the Executive or the Legislative branch, or both, are consistent with the President's authority under the Authorization for Use of Military Force, Pub. L. No. 107-40 (2001) (the "AUMF"), and his war powers under Article II of the Constitution. And, if the definitions are consistent with the Constitution and the AUMF, we must interpret the meaning of the definition as it applies to the facts in any given case. Because, in the end, regardless of what definition is used, it will be a mixed question of law and fact as to whether the Government has met its burden of proof.

Accordingly, the prudent and reasonable course under these circumstances is to review and evaluate the various iterations of the definition drafted by the Executive and/or Congress over the past four years and determine whether there is one version consistent with both the AUMF and Article II. Fortunately, there is a definition that was crafted by the Executive, not the courts, and blessed by Congress which in my judgment passes muster under both the AUMF and Article II. That definition, ironically, is the very first one crafted by the Department of Defense in 2004 for the type of Combatant Status Review Tribunal ("CSRT") proceedings that these six detainees were given. *See*

Order Establishing Combatant Status Review Tribunal, July 7, 2004. And that definition was later, in effect, blessed by Congress when, in response to the Supreme Court's *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) decision, it drafted and passed the Military Commissions Act of 2006, Pub. L. No. 109-366. On that occasion, Congress, in defining the term "unlawful enemy combatant," specifically provided that it included persons who had been "determined to be an unlawful enemy combatant by a Combatant Status Review Tribunal or another competent tribunal established under the authority of the President or the Secretary of Defense." *Id.*, 10 U.S.C. § 948a.

Therefore, notwithstanding the fact that the Supreme Court and our Circuit Court have not as yet passed on the lawfulness of this definition under the AUMF and Article II, this Court will adopt the same definition that was employed in the CSRT hearings for each of these six detainees. Additionally, I will limit any further discussion regarding this definition to deciding any legal issues that arise in interpreting and applying the definition to the facts in this case.

Accordingly, for the reasons set forth above and on the record at the October 27, 2008 hearing, the Court adopts the following definition of "enemy combatant" to govern the proceedings in this case:

> An "enemy combatant" is an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces

that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces.

**SO ORDERED.**

October 27th, 2008

RICHARD J. LEON
United States District Judge